KJET Ventures, LLC v. Jamison, 2026 NCBC 32.

STATE OF NORTH CAROLINA

GASTON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CVS002630-350

KJET VENTURES, LLC,

Plaintiff,

v.

KELVIN L. JAMISON and JUAN
HOUSTON,

Defendants,

v.

KEITH T. FLOYD and ERIC
DOWNING,

Third-Party Defendants

**ORDER AND OPINION ON
PLAINTIFF AND THIRD-PARTY
DEFENDANTS' (I) MOTION FOR
SANCTIONS, TO STRIKE, AND FOR
ENTRY OF DEFAULT, AND (II)
MOTIONS TO DISMISS**

1. This matter is before the Court on Plaintiff and Third-Party Defendants' motion for sanctions, to strike, and for entry of default, (ECF No. 58), Plaintiff's motion to dismiss Defendants' counterclaims, (ECF No. 40), and Third-Party Defendants' motion to dismiss Defendants' third-party complaint, (ECF No. 42).

2. With regard to the motion for sanctions, to strike, and for entry of default, the movants request that the Court, pursuant to Rules 11, 26(g), 37, 41(b), and 55 of the North Carolina Rules of Civil Procedure and in its inherent authority, sanction defendants Kelvin Jamison and Juan Houston and their former counsel, attorney Morris McAdoo, for their failure "to abide by the applicable rules, statutes, and . . .

this Court's direct orders." (ECF No. 59 at 1). Among other things, the movants request that the Court strike Defendants' pleadings, enter default against Defendants, sanction attorney McAdoo and Defendants, award attorneys' fees and costs, and grant such other and further relief as is appropriate. (ECF No. 58 at 3).

3. The motions have been fully briefed, and the Court held a hearing on the matter at which all parties were present or otherwise represented.

4. The Court has considered the motions, the competent evidence of record, the record proper, the arguments of the parties and counsel (as applicable), and applicable law. Having done so, in the exercise of its discretion, the Court determines that it is appropriate to (i) sanction Defendants; (ii) strike their answer, affirmative defenses, counterclaims, and third-party claims; and (iii) enter default against Defendants.

5. Accordingly, the Court **GRANTS in part** and **DENIES in part without prejudice** the motion for sanctions, to strike, and for entry of default, and **DENIES as moot** the motions to dismiss counterclaims and third-party complaint. In reaching this determination, the Court makes the following findings of fact and conclusions of law.

> *Vilmer Caudill, PLLC by Matthew M. Villmer, Tomi Suzuki, and Brittney Slade for Plaintiff KJET Ventures, LLC and Third-Party Defendants Keith T. Floyd and Eric Downing.*
>
> *Colbert Law, PLLC by William Pete Colbert for Defendant Kelvin Jamison.*
>
> *McAdoo Law Group, PLLC by Morris F. McAdoo for Defendants Kelvin Jamison and Juan Houston.*

**FINDINGS OF FACT**[1]

6.     This case was designated a mandatory complex business case on 13 June 2025 and assigned to the undersigned Business Court Judge the same day. (ECF Nos. 1–2).

7.     Over the following months, the Court has repeatedly sanctioned, struck filings of, or otherwise admonished or censured Defendants and attorney McAdoo for failing to comply with the Court's orders and other applicable rules and statutes. (*See, e.g.*, ECF No. 14 (striking a non-compliant filing); ECF No. 30 (striking multiple non-compliant filings and ordering attorney McAdoo to show cause why he should not be held in criminal contempt); ECF No. 38 (addressing false representations in attorney McAdoo's motion to withdraw, including a statement regarding the lack of imminent hearing dates, despite a previous notice of hearing on a show-cause order); ECF No. 56 (addressing Defendants' failure to respond to discovery and ordering compliance with various requirements); ECF No. 61 (censuring attorney McAdoo for failure to comply with the Court's orders and applicable rules and statutes); ECF No. 71 (denying Defendants' motion for multiple failures to follow the Business Court Rules)).

8.     **Defendants' Affidavits**.[2] On 19 August 2025, Defendants filed (as a single document) a motion to dismiss, answer, affirmative defenses, counterclaims, and

---

[1] If any finding of fact in this Order is more properly considered a conclusion of law, or any conclusion of law is more properly considered a finding of fact, it is so designated, notwithstanding the heading under which it might be found in this Order.

[2] To the extent that the Court makes the following findings of fact about Defendants' affidavits and about the existence of an operating agreement for KJET, those findings of fact are made only for the purposes of the Court's analysis under Rule 11. *KURE Corp. v. Peterson,*

third-party claims. (ECF No. 16).[3] In connection with their counterclaims and third-party claims, Defendants filed a motion for preliminary injunction. (ECF No. 18). Attached to the motion for preliminary injunction were two affidavits, one signed by each Defendant. (ECF No. 18, Exs. A and B). In both affidavits, Defendants expressly and unambiguously affirmed that there has never been an operating agreement for KJET. (ECF No. 18, Ex. A, ¶ 5 ("Despite our agreement, no operating agreement was ever executed between the members."); ECF No. 18, Ex. B, ¶ 5 (same)). In their motion for a preliminary injunction and memorandum in support signed by attorney McAdoo, Defendants advanced arguments to the Court premised on these representations by Defendants. (*E.g.*, ECF No. 18 at 12 ("Here, the Articles of Organization, is [sic] the only document that is signed by all four incorporating members of KJET Ventures, LLC.")).

9. To be clear, Defendants did not assert that an operating agreement existed and that there were simply disagreements about it or that the operating agreement was merely invalid or ineffective. Rather, in their affidavits to the Court, Defendants affirmatively represented that *no operating agreement was ever executed.*

10. Several weeks later, on 11 September 2025, Plaintiff's counsel sent attorney McAdoo a letter alerting him of "material [mis]representations" in Defendants'

---

2017 NCBC LEXIS 1, at *15 (N.C. Super. Ct. Jan. 5, 2017) ("The Court makes the following FINDINGS OF FACT solely for the purpose of resolving the Rule 11 Motion. Such findings shall not be binding on the parties at a trial on the merits.").

[3] The putative motion to dismiss failed to comply with the Business Court Rules and was thus ineffective since it was not filed before the answer, was not filed as a separate document, and was not accompanied by a supporting brief. N.C. R. Civ. P. 12; BCR 7.2, 7.5; *see Ordoñez Cordero v. Ordoñez Cordero*, 2026 NCBC LEXIS 49 (N.C. Super. Ct. Mar. 10, 2026) (summarily denying a putative motion to dismiss for failure to comply with BCR 7.2).

motion for a preliminary injunction, supporting memorandum, and affidavits. (ECF No. 27.5 at 2–3). Specifically, Plaintiffs' counsel informed attorney McAdoo that Defendants had made fraudulent representations in their affirmations when they claimed that "no operating agreement was ever executed between the members." (ECF No. 27.5 at 2 (citations omitted)).

11. Thus, as of 11 September 2025, attorney McAdoo was aware, or reasonably should have been aware, that Defendants' representations contained in their affidavits were false.

12. In fact, the evidence of record reflects that (i) an operating agreement for KJET did exist and was signed; (ii) both Defendants were aware of that operating agreement; (iii) both Defendants signed the agreement, as did other putative members of Plaintiff; (iv) defendant Jamison contributed to the drafting of the agreement; and (v) the operating agreement originated from defendant Jamison's *own email address.* (ECF Nos. 27, 27.2, 27.3, and 27.4).

13. The Court finds for purposes of this Order and the Rule 11 motion at issue that an operating agreement was executed by Defendants and the other putative members of Plaintiff—i.e., the Third-Party Defendants.

14. Defendants knew and were aware of the operating agreement signed by the members of Plaintiff, and their statements to the contrary were false.

15. Given the opportunity to address the sworn representations in their affidavits, Defendants did not assert that the operating agreement provided by Plaintiff was inaccurate or falsified, nor did they contend that the signatures were

forged or that the documents at issue did not exist. Indeed, at no time since Plaintiff's counsel apprised attorney McAdoo of the misrepresentation by letter has either Defendant corrected or amended their respective affidavit to reflect the existence of the signed operating agreement for KJET originating from defendant Jamison's own email address.

16. Defendants lacked a good-faith basis in fact for asserting in an affidavit that "no operating agreement was ever executed between the members," and the statement was not well-grounded in fact.

17. Further, in light of Defendants' and their attorney's conduct throughout this action, it is apparent that the affidavits were filed for the improper purposes of (i) misleading the Court, (ii) perpetuating this litigation and Defendants' counterclaims and defenses, and (iii) delaying proceedings and a resolution of this action.

18. **Discovery**. On 25 November 2025, the Court conducted a BCR 10.9 conference concerning certain deficiencies in Defendants' discovery productions, including Defendants' failure to provide full and complete responses to discovery requests from Plaintiff. (*See* ECF No. 56). The parties were all represented through their counsel of record during that conference.

19. After hearing from counsel for the parties and considering all appropriate matters of record, the Court determined that Defendant had, in fact, failed to fully respond to Plaintiff's discovery requests and had failed to produce responsive documents.

20.     Accordingly, the Court entered an Order that same day requiring that Defendants supplement their discovery responses and productions (the "**BCR 10.9 Order**"). (ECF No. 56). In relevant part, the Court ordered as follows:

b.  Not later than **5:00 pm ET, 5 December 2025**, defendant Jamison is **DIRECTED** to fully (i) supplement his written responses and produce all "responsive, non-privileged documents" related to KJET's third, fourth, fifth, sixth seventh, eighth, ninth, tenth, twelfth, and thirteenth requests for production, and (ii) supplement his responses to KJET's second, fifth, sixth, eighth, and ninth interrogatories;

c.  Not later than **5:00 pm ET, 5 December 2025**, defendant Houston is hereby **DIRECTED** to fully (i) supplement his written responses and produce all "responsive, non-privileged documents" related to KJET's second, sixth, eighth, and ninth requests for production, and (ii) supplement his responses to KJET's second, third, fifth, and seventh interrogatories;

d.  Not later than **5:00 pm ET, 5 December 2025**, Defendants shall both thoroughly review their prior responses and objections to all of Plaintiff's first set of interrogatories and first set of requests for production to each of them and shall **SUPPLEMENT** (i) each response to a request for production for which any responsive documents, ESI, or other requested materials that are now in Defendants' custody, control, or possession and have not been produced to Plaintiff, and (ii) each interrogatory response for which the prior response is—as of the deadline—no longer accurate or complete;

e.  Not later than **5:00 pm ET, 5 December 2025**, Defendants shall **SERVE** verifications of their responses to Plaintiff's first set of interrogatories;

f.  Not later than **5:00 pm ET, 5 December 2025**, Defendants shall **FILE** and **SERVE** a verification confirming that Defendants have (i) complied with this Order, (ii) produced all documents, ESI, and other materials in their custody, control, or possession that are responsive to any of Plaintiff's first requests for production, (iii) fully supplemented and provided complete and truthful responses to each of Plaintiff's first set of interrogatories,

and (iv) not withheld any materials from production on the basis of any objection; and

g. To the extent that either Defendant contends no such supplemental documents, ESI, materials, or information exist with respect to any request for production or interrogatory, the verification shall so state and shall be accompanied by a summary of the circumstances justifying that response (e.g., that all such materials were previously produced and that no additional information exists, that any such information is not in Defendants' custody, control, or possession, etc.).

(ECF No. 56, ¶ 8(b)–(g)).

21. Defendants did not provide complete written supplemental responses to KJET's interrogatories or requests for production by 5 December 2025 as required by the Court. While Defendants provided minimal discovery supplementation after entry of the Court's Order, the production was not a complete production as required by the Court.

22. Defendants did not supplement "(i) each response to a request for production for which any responsive documents, ESI, or other requested materials that [were] then] in Defendants' custody, control, or possession and ha[d] not been produced to Plaintiff, and (ii) each interrogatory response for which the prior response [wa]s—as of the deadline—no longer accurate or complete" by 5 December 2025 as required by the Court. (ECF No. 56, ¶ 8(d)).

23. As reflected on the Court's own docket, despite the Court's BCR 10.9 Order and its requirement that they do so by 5 December 2025, Defendants undisputedly did not file and serve a verification confirming their compliance with the Court's Order or confirming that they had "(ii) produced all documents, ESI, and other materials in their custody, control, or possession that [we]re responsive to any of

Plaintiff's first requests for production, (iii) fully supplemented and provided complete and truthful responses to each of Plaintiff's first set of interrogatories, and (iv) not withheld any materials from production on the basis of any objection[.]" (ECF No. 56, ¶ 8(f)).

24. Defendants also did not file a verification asserting that no "supplemental documents, ESI, materials, or information exist[ed] with respect to any request for production or interrogatory" to which the Court had ordered supplementation, nor did Defendants otherwise file a verification suggesting that they were unable to supplement the responses or productions for any other reason. (ECF No. 56, ¶ 8(g)).

25. On 19 December 2025, well after Defendants' time to comply with the Court's discovery Order had expired, Plaintiff and Third-Party Defendant filed the instant motion for sanctions and a corresponding brief in support of the motion, seeking sanctions against Defendants and attorney McAdoo pursuant to, among other things, Rules 11 and 37 of the North Carolina Rules of Civil Procedure and the Court's inherent authority. (ECF Nos. 58 and 59).

26. On 8 January 2026, merely one day after he was permitted to withdraw from the case at his own insistence, (ECF No. 61, ¶ 120(e)), attorney McAdoo made a purported "limited appearance"[4] on behalf of Defendants for the purpose of

---

[4] As this Court has explained, limited appearances, outside the context of objecting to personal jurisdiction, are generally "ineffective and unwarranted," and "a purported notice of 'limited appearance' does not relieve counsel of [its] obligation" to represent its client until the final disposition of the action or until the Court otherwise grants counsel leave to withdraw from the matter. *Mary Annette, LLC v. Crider*, 2026 NCBC LEXIS 33, at *9–12 (N.C. Super. Ct. Feb. 5, 2026) (citations omitted). Accordingly, attorney McAdoo is, "once again, counsel of record for [Defendants] in this matter, at least with regard to proceedings in this Court, subject to all of the responsibilities of counsel of record," unless and until the

responding to the motion for sanctions. (ECF Nos. 62 and 63). The filing by attorney McAdoo generally posits, without supporting evidence, that Defendants have complied with the Court's BCR 10.9 Order and that Defendants should therefore not be subject to sanctions. (*See generally* ECF No. 62).

27.    On 4 February 2026, almost two months after the motion for sanctions was filed, defendant Jamison filed a "Motion to Seek Leave of Court to Grant Additional Time."  (ECF No. 69). The motion consists of one paragraph, which reads as follows:

> Defendants Kelvin L. Jamison and Juan Houston (hereinafter referred to as "Defendants") respectfully are hereby asking the court for additional time to comply with the November 25, 2025, as well as any additional orders or actions for sixty days until the Defendants can seek, retain and bring new counsel up to date on this matter. At such times if granted, the Defendants will fully comply and stay in compliance with the matter as it continues to go forward along with the court's schedule.

(ECF No. 69 at 1).[5]

28.    In seeking "additional time to comply with the November 25, 2025" Order, Defendants not only conceded that they had failed to comply with the Court's BCR 10.9 order for nearly two months but indicated that they would be unable to do so for *another* two months. (ECF No. 69 at 1; *see* ECF No. 71, ¶ 2). Troublingly, Defendants

---

Court grants another motion to withdraw. *Foster Biodevice, LLC v. Cantrell*, 2016 NCBC LEXIS 53, at *14 (N.C. Super. Ct. July 11, 2016).

[5] The motion contains the names of both defendants but was not actually signed by either Defendant, though it was filed under defendant Jamison's account. (ECF No. 69). Absent a signature, the Court may properly strike it pursuant to Rule 11 of the North Carolina Rules of Civil Procedure. *See* N.C. R. Civ. P. 11. Moreover, inasmuch as the motion was filed by defendant Jamison but purportedly made on behalf of both Defendants, such a filing is impermissible and constitutes the unauthorized practice of law by defendant Jamison as to defendant Houston. *See* N.C. Gen. Stat. § 84–4.

offered no explanation for their continuing failure to comply. (ECF No. 69; *see* ECF No. 71, ¶ 2).

29. In the BCR 10.9 Order, the Court provided notice to Defendants that "their failure to fully and timely respond as required by this Order may subject them to sanctions under the North Carolina Rules of Civil Procedure, the Business Court Rules, the Court's inherent authority, and other applicable law." (ECF No. 56, ¶ 8(h)).

30. The Court held a hearing on the instant sanctions motion and other motions on 20 February 2026. Plaintiff, third-party defendants Floyd and Downing, and defendant Jamison were represented by their respective counsel, and defendant Houston and attorney McAdoo[6] were also present. (ECF No. 65).

31. At the hearing, Defendants at various times conceded or otherwise did not dispute that, following the Court's BCR 10.9 Order, (i) their document supplementation was minimal; (ii) they did not send written supplementation of their discovery responses; and (iii) they did not file the verification statement as explicitly required by the BCR 10.9 Order, the absence of which is also reflected on the Court's docket. (*See* ECF No. 56, ¶ 8(b)–(g)).

32. Defendants (personally, through attorney McAdoo when he represented them, or both) were aware of the BCR 10.9 Order and its requirements and were aware of their discovery obligations, including the obligation to supplement their discovery responses and productions.

---

[6] At the beginning of the hearing, attorney McAdoo indicated that he was unsure why he was present for the hearing. At his request, with no objection, and with the Court's leave, attorney McAdoo was excused from further participation in the hearing. He was not, however, relieved of his representation obligations accruing based on his recent *re*-appearance in the case.

33. Defendants suggested that they had provided some information to attorney McAdoo but that they were unaware why there had not been full compliance with the BCR 10.9 Order. Even if Defendants provided some minimal information to their attorney (an assertion of which the Court is skeptical and of which Defendants have provided no evidence), Defendants failed to reasonably and timely ensure that that information and related materials were ultimately processed and served in compliance with the Court's BCR 10.9 Order.

34. Based on the Court's review of the record, the Court finds that Defendants have repeatedly refused and otherwise failed to comply with their discovery obligations in this case and with the Court's Orders, including the BCR 10.9 Order.

35. Defendants' conduct has created an undue burden on Plaintiff and Third-Party Defendants in their effort to have Defendants comply with Defendants' discovery obligations.

36. Further, Defendants' conduct has unduly delayed these proceedings and impeded the efficient administration of justice, necessitating hearings and conferences before the Court, motion practice, and other proceedings based on Defendants' failures to comply with the Court's Orders and applicable rules.

37. Moreover, Defendants' conduct has prejudiced Plaintiff and Third-Party Defendants in this action by preventing those parties and their counsel from obtaining appropriate discovery regarding the factual and documentary bases for the claims and defenses at issue in this lawsuit, thereby impairing those parties' ability to adequately pursue their claims and defenses, as applicable.

38.     Notwithstanding Defendants' filings to the contrary, Defendants have failed to timely and fully supplement their document production, failed to timely and fully supplement their written discovery responses, failed to timely file or serve the verification required by the Court, and failed to timely file or serve a written explanation of their failures or inability to comply with the Court's BCR 10.9 Order.

39.     Defendants' overall discovery responses, production, and supplementation remain incomplete.

40.     In advance of, and at the time of, the hearing before the Court, Defendants had the ability and opportunity to comply with the BCR 10.9 Order and were able to take reasonable measures that would enable them to comply with the Order, yet they failed to do so.

41.     Defendants and their counsel failed to make reasonable efforts to comply with the BCR 10.9 Order and the rules applicable to this action.

42.     Defendants' repeated (and ongoing) failures and refusals to fully comply with the BCR 10.9 Order were unjustified, improper, and unreasonable.

43.     No good cause exists for Defendants' failures to comply with the Court's BCR 10.9 Order.

44.     The BCR 10.9 Order remains in full force and effect, and Defendants (whether personally, through their counsel, or both) at all relevant times knew and understood the terms of that Order.

45.     Having heard from Defendants and attorney McAdoo in the course of various hearings and having otherwise considered all competent matters of record

properly before the Court, the Court finds that Defendants and attorney McAdoo are not credible in their arguments and representations to the Court.

46. The Court has considered all reasonable and potentially available sanctions for Defendants' conduct in this action, including lesser sanctions than those imposed by this Order.

47. As set forth below, based on the factual circumstances of this action, the Court finds that no sanctions less severe than those imposed by this Order would be reasonable or sufficient to address Defendants' conduct and that the sanctions imposed by this Order are reasonable and just.

48. As reflected in the record, the Court previously sanctioned attorney McAdoo, as Defendants' counsel of record and representative, in this action under Rule 11 of the North Carolina Rules of Civil Procedure and in the Court's inherent authority for making filings on behalf of Defendants that were not well grounded in fact and that were signed and filed for improper purposes. (*See generally* ECF No. 61).

49. As a result, the Court has already sanctioned attorney McAdoo in this action, as counsel and representative for Defendants, in the amount of $3,632.50, along with a censure and referral to the North Carolina State Bar. (*See generally* ECF No. 61).

50. These failures and deficiencies are only a portion of those attributable to Defendants and their counsel in this action. At various times, as confirmed in conferences, hearings, and other proceedings before the Court, attorney McAdoo has indicated that Defendants have failed to provide information to him, that he has

signed or served documents without their input, and that he has served documents without substantive inquiry.

51. Defendants and attorney McAdoo were given appropriate notice and an opportunity to be heard on potential sanctions as set forth in this Order.

52. Defendants and attorney McAdoo have, on various occasions in this action, blatantly ignored the Court's Orders, the Business Court Rules, and other applicable rules and requirements applicable to this action.

53. Even if the Court had not taken such actions previously and even if Defendants' and attorney McAdoo's prior conduct were disregarded, with the conduct addressed in this Order considered their first violations, the sanctions set forth in this Order still are and would be reasonable under the circumstances of this particular case.

## CONCLUSIONS OF LAW

54. The Court has jurisdiction over the parties and the subject matter of this action.

55. Without good cause, Defendants failed to timely comply with the Court's 10.9 Order and applicable rules and statutes and have failed to make reasonable attempts to comply with the BCR 10.9 Order.

56. Defendants have repeatedly failed to provide or permit discovery as required by the Court and applicable rules.

57. Despite ample opportunity to do so, Defendants failed to reasonably or adequately explain their failure and refusal to comply with the Court's BCR 10.9

Order or their failure and refusal to (i) identify, produce, or otherwise disclose the documents, information, and other materials responsive to the discovery requests; (ii) provide written supplemental responses required by the Court; or (iii) provide the verification required by the Court.

58. Defendants failed to obey or otherwise comply with the BCR 10.9 Order, which is an order to provide or permit discovery and was previously entered pursuant to Rule 37 of the North Carolina Rules of Civil Procedure and properly served on Defendants.

59. Defendants' failures to comply with the BCR 10.9 Order are unjustified, improper, and unreasonable.

60. Without any good-faith basis, Defendants have also made demonstrable misrepresentations in signed affidavits filed with the Court in violation of Rule 11 of the North Carolina Rules of Civil Procedure. Defendants' filings were not well-grounded in fact and, indeed, were made for the improper purposes of misleading the Court, perpetuating this litigation, and delaying the ultimate resolution of the case, as set forth above.

61. Thus, the Court determines that Rules 37, 41, 11, and the Court's inherent authority are implicated, and in the exercise of its discretion, the Court determines that sanctions are appropriate as set forth in this Order.

62. In reaching this determination, the Court has considered all lesser potential and available sanctions and determines that they would not adequately serve to address Defendants' conduct.

63. **Rules 37 and 41**. Under Rule 37(b) of the North Carolina Rules of Civil Procedure, if a party "fails to obey an order to provide or permit discovery," the Court "may make such orders in regard to the failure as are just." N.C. R. Civ. P. 37(b)(2); *Dunhill Holdings, LLC v. Lindberg*, 282 N.C. App. 36, 56 (2022) (citations omitted).

64. In the Court's discretion, this may include an order sanctioning the non-compliant party by directing (i) "that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order," and (ii) "striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." N.C. R. Civ. P. 37(b)(2)(a) and 37(b)(2)(c); *Dunhill Holdings*, 282 N.C. App. at 56 (citations omitted); *see Out of the Box Devs., LLC v. LogicBit Corp.*, 2014 NCBC LEXIS 7, at *3 (N.C. Super. Ct. Mar. 20, 2014) ("Rule 37 should be construed liberally to provide trial courts with flexibility to impose sanctions." (citation omitted)).

65. The Court's 10.9 Order is "an order to provide or permit discovery" within the meaning of Rule 37 and remains in full force and effect. (ECF No. 56); N.C. R. Civ. P. 37(b). Accordingly, failure to comply with the 10.9 Order implicates Rule 37. N.C. R. Civ. P. 37(b).

66. Similarly, Rule 41(b) of the North Carolina Rules of Civil Procedure permits the Court to dismiss an action or any claim for a party's failure "to comply with these rules or any order of court" on a party's motion. N.C. R. Civ. P. 41(b); *Out of the Box*,

2014 NCBC LEXIS 7, at *2 n.1 (noting that Rule 41 "permits dismissal of an action or claim for failure 'to comply with . . . *any* [court] order.'" (alterations in original) (citations omitted)).

67. Defendants have failed to comply with the Court's 10.9 Order in myriad respects, as set forth above, and, despite their time for compliance having expired, have acknowledged with subsequent filings their past failure to comply by seeking additional time to comply in the future. (*See* ECF No. 56, ¶ 8(b)–(g); ECF No. 69 at 1; ECF No. 71, ¶ 2)).

68. In its discretion, the Court determines that sanctions under Rule 37(b) and Rule 41(b) are appropriate given Defendants' numerous failures to comply with the Court's 10.9 Order, particularly considering their inexplicable pattern of non-compliance with other applicable Orders, statutes, and rules.

69. While the Court imposes sanctions on multiple bases in this Order, the violations of Rules 37 and 41, as set forth above, constitute valid independent bases upon which to impose sanctions in this action, irrespective of any further wrongful conduct (such as Rule 11 violations) otherwise set forth in this Order.

70. Accordingly, the sanctions imposed in this Order are imposed on each independent basis on which they may be imposed under applicable law.

71. **Rule 11**. Rule 11 of the North Carolina Rules of Civil Procedure provides in relevant part as follows:

> Every pleading, motion, and other paper of a party represented
> by an attorney shall be signed by at least one attorney of record
> in his individual name, whose address shall be stated . . . . The
> signature of an attorney or party constitutes a certificate by him

that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

N.C. R. Civ. P. 11(a).

72.     Thus, when signing a pleading, motion, or other paper submitted to the Court, an attorney or party "certifies that three distinct things are true: the pleading is (1) well grounded in fact; (2) warranted by existing law, or a good faith argument for the extension, modification, or reversal of existing law (legal sufficiency); and (3) not interposed for any improper purpose." *Davis v. Durham Mental Health/Dev. Disabilities/Substance Abuse Area Auth.*, 165 N.C. App. 100, 108 (2004) (quoting *Bryson v. Sullivan,* 330 N.C. 644, 655 (1992) (internal quotation marks and punctuation omitted)).

73.     "A breach of the certification as to any one of these three [requirements] is a violation of the Rule." *Hill v. Hill*, 173 N.C. App. 309, 313 (2005) (quoting *Bryson,* 330 N.C. at 655) (alterations in original) (internal punctuation omitted)).

74.     In evaluating whether a document is well grounded in fact under Rule 11, the Court "must [determine]: (1) whether the [movant] undertook a reasonable

inquiry into the facts *and* (2) whether the [movant], after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact." *Id.* at 314 (quoting *McClerin v. R-M Indus., Inc.*, 118 N.C. App. 640, 644 (1995)).

75. Defendants knew and were both aware of the operating agreement for KJET signed by all putative members, despite the explicit affirmation to the contrary. (*Compare* ECF No. 18, Ex. A, ¶ 5 *and* ECF No. 18, Ex. B, ¶ 5, *with* ECF Nos. 27.2, 27.3, *and* 27.4).

76. As set forth above, Defendants' statements in their affidavits were false—demonstrably so—and Defendants have provided no substantive response concerning that falsity.

77. Ultimately, the Court concludes that Defendants' statements in their affidavits were not well-grounded in fact in that they affirmatively misrepresented that no operating agreement had been signed. *Hill*, 173 N.C. App. at 314 (citation omitted).

78. Further, as set forth above, the Court concludes that these misrepresentations contained in Defendants' affidavits were made for the improper purposes of (i) misleading the Court, (ii) perpetuating this litigation and Defendants' counterclaims and defenses, and (iii) delaying proceedings and a resolution of this action.

79. Thus, the Court concludes that, in signing and submitting their respective affidavits in support of their motion for a preliminary injunction, Defendants violated Rule 11.

80. Further, Defendants' motion for preliminary injunction and corresponding memorandum, which both contain attorney McAdoo's signature, are premised in large part upon Defendants' false statements contained in their affidavits regarding the existence of a signed operating agreement. (*E.g.*, ECF No. 18 at 12).

81. Even generously assuming that attorney McAdoo reasonably believed the facts on which he relied to be well-grounded when he initially filed the motion and memorandum, he was aware—or reasonably should have been aware—from at least 11 September 2025 that his clients' affidavits, and therefore the motion and memorandum based on them, were not well grounded in fact and have been maintained without supplementation for improper purposes. (ECF No. 27.5) (alerting attorney McAdoo to falsities in his Defendants' affidavits).

82. To date, despite ample opportunity to do so, neither attorney McAdoo nor Defendants have corrected, amended, or supplemented either the motion for preliminary injunction or the corresponding memorandum in support to withdraw or otherwise address their reliance on Defendants' misrepresentations, nor have Defendants provided any reason for their false statements.

83. Accordingly, the motion for preliminary injunction and the memorandum in support also are not well-grounded in fact and were filed (or at least maintained) for improper purposes like the affidavits upon which they were based.

84. The filings are in violation of Rule 11 and are attributable to Defendants.

85. Defendants may appropriately be sanctioned based on attorney McAdoo's signatures on the motion and memorandum. *Pritchett v. Dudek*, 299 N.C. App. 821,

2025 N.C. App. LEXIS 507, at *10–11 (2025) (unpublished) ("It is clear both in statute and case law that a represented party may be sanctioned for improper purpose violations under Rule 11 at the discretion of the trial court."); *Al-Hassan v. Salloum*, 2021 NCBC LEXIS 62, *4–5 (N.C. Super. Ct. July 2, 2021) ("[T]he acts of the attorney are usually imputed to the client.").

86. Therefore, in the Court's discretion and independent of Defendants' Rule 37 violations, sanctions are also appropriate under Rule 11.

87. **<u>Inherent Authority</u>**. Even if Defendants' and attorney McAdoo's conduct were not sanctionable under Rules 11, 37, and 41 of the North Carolina Rules of Civil Procedure, the same sanctions would be (and are) appropriate in the exercise of the Court's inherent authority.

88. Through its inherent powers, the Court has the "authority to do all things that are reasonably necessary for the proper administration of justice." *Beard v. N.C. State Bar*, 320 N.C. 126, 129 (1987) (citations omitted); *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2022 NCBC LEXIS 58, at *4 (N.C. Super. Ct. June 13, 2022) (discussing inherent authority).

89. This inherent authority includes "the power . . . to sanction parties for failure to comply with court orders[.]" *Out of the Box*, 2014 NCBC LEXIS 7, at *9 (alterations in original) (quoting *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 674 (1987)).

90. Among other things, the Court has inherent authority and discretion to sanction Defendants on the same bases set forth above for the Rule 11 and Rule 37 violations. *See In re Small*, 201 N.C. App. 390, 394 (2009).

91. Attorney McAdoo and Defendants were given appropriate notice and an opportunity to be heard on potential sanctions in the Court's inherent authority.

92. In the exercise of judicial discretion, in addition to being appropriate for each of the other reasons set forth above, the Court determines that the sanctions set forth in this Order are appropriate pursuant to the Court's inherent "authority to do all things that are reasonably necessary for the proper administration of justice," *Beard*, 320 N.C. at 129; to sanction counsel and parties for failure to comply with court orders, *Out of the Box*, 2014 NCBC LEXIS 7, at *9; and otherwise "to manage its affairs, to see that justice is done, and to see that the administration of justice is accomplished as expeditiously as possible[.]" *Small*, 201 N.C. App. at 394 (citations omitted).

93. **Appropriate Sanctions**. The Court has previously imposed sanctions or otherwise taken remedial actions less severe than those imposed by this Order for Defendants' and attorney McAdoo's repeated failures to abide by the Court's Orders and applicable rules and statutes. These include admonishments and censures, striking documents, and financial sanctions, among other things. (*E.g.*, ECF Nos. 14, 30, 61).

94.    Those actions have not curtailed Defendants' or attorney McAdoo's failures to comply with the Court's various Orders, the Business Court Rules, or the North Carolina Rules of Civil Procedure.

95.    Even if this were Defendants' and attorney McAdoo's first failures to comply with the Court's Orders and applicable rules, the sanctions set forth in this Order would be appropriate.

96.    The Court has again considered all available sanctions, including those less serious than those imposed by this Order, and concludes that any lesser sanctions would be insufficient and inadequate to address Defendants' dilatory and improper conduct, to remedy the prejudice to Plaintiff and Third-Party Defendants, or otherwise to address the matters at issue, particularly considering the extent of Defendants' failures, the procedural posture of the case, and related facts and circumstances of record.

97.    The conduct at issue warrants substantial sanctions against Defendants directly, including (i) striking Defendants' answer, affirmative defenses, counterclaims, and third-party claims; and (ii) entering default against Defendants on KJET's affirmative claims.

98.    As to attorney McAdoo individually, time and again throughout this case, his conduct has been egregiously improper and has demonstrated a remarkable disregard for the Court's Orders and applicable rules, resulting in sanctions against him. (*See, e.g.*, ECF Nos. 30 and 61). Those sanctions are matters of public record. While further sanctions against attorney McAdoo might be warranted, they would

also serve little value in the current context of this action. Accordingly, in the exercise of its discretion, the Court determines that it is neither useful nor productive to further individually sanction attorney McAdoo yet again.

99. **Motions to Dismiss**. Plaintiff and Third-Party Defendants have outstanding motions to dismiss Defendants' counterclaims and third-party causes of action. Since the Court has already fully resolved those claims via its resolution of the motion for sanctions, the Court need not reach the merits of their respective motions to dismiss. *See, e.g.*, *Am. Transp. Grp. Ins. Risk Retention Grp. v. MVT Ins. Servs.*, 2021 NCBC LEXIS 11, at *16 (N.C. Super. Ct. Feb. 2, 2021) (denying Rule 12(b)(6) and Rule 12(c) motions to dismiss as moot "[s]ince the entire matter before the Court c[ould] be resolved through the Court's inherent authority to impose sanctions on a party engaging in misconduct").

### ORDER

100. Therefore, in the exercise of its discretion, the Court **GRANTS in part** the motion for sanctions and hereby (i) **STRIKES** Defendants' answer, affirmative defenses, counterclaims, and third-party claims, (ECF No. 16), and (ii) **ENTERS** default against Defendants as to the claims asserted in Plaintiff's complaint, (ECF No. 6). The Court otherwise **DENIES without prejudice** the remainder of the motion for sanctions.

101. Further, the Court **DENIES as moot** KJET's motion to dismiss Defendants' counterclaims and Third-Party Defendants' motion to dismiss Defendants' third-party complaint.

**SO ORDERED**, this 14th day of April 2026.

/s/ Matthew T. Houston

Matthew T. Houston
Special Superior Court Judge
 for Complex Business Cases